FILED

2007 Mar-15  PM 12:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ANDALUSIA ENTERPRISES, INC., et al., | } } } | |
| Plaintiffs, | } } | CIVIL ACTION NO. 07-AR-0078-S |
| v. | } } | |
| EVANSTON INSURANCE COMPANY, et al., | } } } | |
| Defendants. | } | |

## MEMORANDUM OPINION

There are intriguing twists and turns in this case, which reached this court by removal from the Circuit Court of St. Clair County, Alabama. Was the case improvidently removed? There are two motions to remand, one by plaintiffs, Andalusia Enterprises, Inc. ("Andalusia"), and Ira Hughes ("Hughes"), and the other by a defendant, Broderick Lane ("Lane"), who did not join in the removal. This court's jurisdiction, if it exists, is based upon 28 U.S.C. §§1441 and 1332, statutes that allow removal if there is complete diversity between the parties and if there is at least $75,000 in controversy.

The procedural facts reflect that plaintiffs, Andalusia and Hughes, are both citizens of Alabama. They sued Lane in a state court for breach of contract. Lane responded not only with an answer, but with a multi-count counterclaim that included tort claims. Lane added as counterclaim defendants Citgo Petroleum Corporation and others, charging them all with conspiracy to harm

him and with specific alleged tortious acts.  Andalusia and
Hughes thereupon called upon their liability insurance companies,
Evanston Insurance Company ("Evanston"), American-Western
Insurance Company ("American-Western"), Regis Insurance Company
("Regis"), and Penn-American Insurance Company ("Penn-American"),
to defend the counterclaim.  When the insurance companies failed
or refused to do so, Andalusia and Hughes filed the instant
entirely separate action in the same St. Clair Circuit Court
against the insurance companies, each of which is a citizen of a
state other than Alabama.  Invoking Alabama's Declaratory
Judgment Act, Andalusia and Hughes sought a declaration that the
four insurance companies owe them a defense to Lane's underlying
counterclaim, and indemnity in the event Lane prevails on any of
his tort theories.  In addition to the would-be insurers,
Andalusia and Hughes named as a defendant, Lane, who is a fellow
citizen of Alabama.

Success on Lane's underlying counterclaim could easily
result in a judgment against Andalusia and Hughes in excess of
the $75,000 jurisdictional amount for a §1332 removal.  There is
no dispute about this jurisdictional prerequisite, that is,
unless the complaint is construed not to seek indemnity, as
Andalusia and Hughes now ask this court to construe it.  If they
had only sought to enforce an alleged obligation by their
insurers to defend and had not mentioned indemnity, the existence

2

of the $75,000 amount in controversy would be highly problematical.  Without a claim for indemnity, the court would require proof by the removing defendants by a preponderance of the evidence that the cost of providing the defense will, in fact, exceed $75,000.  Such an undertaking would be difficult, if not impossible.  But, such is not the case here.  Perhaps the enigmatic request for indemnity was inadvertent, but it appears in the complaint.  If Andalusia and Hughes prevail over Lane in the underlying case, the question of indemnity will, of course, become academic.  As it stands now, there exists more than $75,000 in controversy.

In the instant action, Andalusia and Hughes seek no relief against Lane.

Within thirty (30) days after service of the state court complaint on Penn-American, which was the first served defendant, Penn-American filed a notice of removal (erroneously styled "Petition for Removal"), removing the case to this court under §§1441 and 1332, alleging that Lane, the only non-diverse defendant, was fraudulently joined and/or is a nominal party. American Western and Evanston thereafter timely joined in the removal.  Regis is excused from any obligation to join because it had not been served when the notice of removal was filed.  As stated, Lane did not join in the removal.  Although Penn-American's notice of removal includes a copy of the state court

complaint, it does not contain a copy of any summons served on any defendant.

As this court routinely does in cases removed under §1332 on the basis of alleged fraudulent joinder of a non-diverse defendant, the court deemed a Rule 12(b)(6), F.R.Civ.P., motion to have been filed by Lane, the non-diverse defendant, and the said motion was set for hearing.  Before the motion could be heard, Andalusia and Hughes filed their present motion to remand, and Lane filed his separate motion to remand, expressly disclaiming any intention to seek a dismissal of the action as against him.

Only after the motions to remand had been filed, did Evanston file a motion to realign Lane with Andalusia and Hughes as a plaintiff, arguing that to do so is not only proper, but will create the needed diversity of citizenship between plaintiffs and defendants without regard to whether, as Penn-American alleged in its notice of removal, Lane was fraudulently joined or is an unnecessary party.  Evanston's motion to realign was filed more than thirty (30) days after the thirty (30) day time period for removal had expired.

Andalusia and Hughes, as plaintiffs, and Lane, as defendant, obviously are protagonists in their underlying case, but uniquely, they agree perfectly with each other in this case that it belongs in the state court where it was filed.

Having given the essential history of the case, the court now proceeds to address the arguments made by movants in support of their pending motions to remand and the counter-arguments made by the removing defendants.  As the court examines its jurisdiction, it, as it always must, keeps firmly in mind the constitutional fact that state courts are the courts of primary or general jurisdiction in this country and that the federal courts are courts of limited or statutory jurisdiction, meaning that access to federal courts can be obtained only by a supplicant's meeting all of the jurisdictional requirements, construed against him.  *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868 (1941).

Andalusia, Hughes and Lane all challenge this court's subject-matter jurisdiction that is premised by the removing defendants on diversity.  Movants say that non-diverse defendant Lane was not only a proper party defendant in the state declaratory action, but was a necessary party defendant in that action.  They are correct.  Lane was neither fraudulently joined nor is he a nominal party.  The joinder of Lane as a defendant was necessary under Alabama law.  This is quickly made clear from a reading of Ala. Code §6-6-27, which is a part of Alabama's Declaratory Judgment Act.  The following unambiguous language is critical to the core issue before this court:

> **All persons shall be made parties who have, or claim, any interest which would be affected by the declaration**

5

        . . .

(emphasis supplied).

As an alleged tort victim, Lane had an interest, actual or
theoretical, in whatever finding will ultimately be made on the
coverage question, whether against Andalusia and Hughes or in
their favor.  Lane was therefore an indispensable party in the
state court action pursuant to §6-6-27.

        For the purposes of §6-6-27, there is no distinction between
an Alabama declaratory action brought by an insurance company
against its insured, and a declaratory action brought by an
insured against his insurance company.  Neither *American
Automobile Ins. Co. v. English*, 94 So.2d 397 (Ala. 1957), nor
*State Farm Mutual Automobile Ins. Co. v. Sharpton*, 66 So.2d 915
(Ala. 1953), recognizes any difference between a tort victim's
being a necessary party under one procedural posture, and not its
mirror image.  There is nothing remarkable about a tortfeasor's
suing not only his insurance company for coverage, but
simultaneously naming his adversary in the underlying case as a
defendant.  This is done every day in Alabama.  In fact, under
§6-6-27, it must be done.

        The remarkable thing is that the removal issue now before
the court under Alabama law had not been specifically addressed
in a published opinion until Judge Coogler of this court
addressed it on January 17, 2007.  When the present motions to

6

remand were orally argued, the parties were just as unaware as
this court was that another judge of the court had just finished
dealing with it.  Judge Coogler's case is strikingly similar to
this case, but, as will appear, is different in several material
respects.  In *Earnest v. State Farm Casualty Co.*, _____ F.Supp.2d
_____, 2007 WL 575673 (N.D. Ala., Jan. 17, 2007),  Judge Coogler
denied a motion to remand filed by an insured who had sued in an
Alabama court both his insurance company and the non-diverse tort
claimants who had sued him.  Judge Coogler held that "there is no
possible cause of action, **in the traditional sense**, that exists
against the non-diverse defendants" (emphasis supplied).  Judge
Coogler, however, did not go so far as to agree with the removing
insurance company that the non-diverse defendants had been
fraudulently joined by the plaintiff insured.  Instead, he
pointed out that in *American Safety Casualty Ins. Co. v. Condor
Associates LTD*, 129 Fed.Appx. 540 (11th Cir. 2005), the Eleventh
Circuit (which was following the old Fifth Circuit's *Ranger Ins.
Co. v. United Housing of New Mexico*, 488 F.2d 682 (5th Cir.
1974)) recognizes that tort claimants are indispensable parties
in declaratory judgment actions over coverage.  Accordingly,
based on both Alabama and Eleventh Circuit precedent, Judge
Coogler concluded, as this court now concludes, that a tort
claimant is properly named as a party defendant in a declaratory
judgment action over coverage in Alabama.

7

Nevertheless, Judge Coogler in *Earnest* denied the motion to remand.  Instead, he *sua sponte* realigned the alleged tortfeasor with the injured party, reasoning that their interests are the same.  This created diversity.  This court respectfully disagrees with Judge Coogler in this regard.  This court's reasons for disagreement follow.  Some are based on factual or procedural distinctions between the two cases.

There is no procedural device in Alabama by which a tortfeasor can name his adversary as a co-plaintiff in a declaratory action over insurance coverage.  A plaintiff cannot draft a co-plaintiff who does not volunteer.  Because it would be error to dismiss this perfectly properly brought action as against Lane, the question becomes whether Evanston's belated motion can be granted in order to establish diversity by doing what was not even faintly hinted at in the notice of removal. Judge Coogler quite correctly recognized a court's duty to "look beyond the pleadings, and arrange the parties according to their sides in the dispute", quoting from the Supreme Court's *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 62, 63, 69, S.Ct. 15, 17 (1941).  On this basis, Judge Coogler found that the tortfeasor's and the injured party's interests were the same, thus mandating realignment and establishing complete diversity. However, it does not appear in *Earnest*, as it does here, that the tort-claimant-defendant actively resisted being realigned.  Lane,

8

of course, realizes that realignment can create the complete diversity that otherwise exists only if the action is dismissed against him.  Not only does Lane resist realignment, but further distinguishing this case from *Earnest*, Andalusia and Hughes argue that the insurer defendants effectively waived realignment by not timely raising it as the only means, or as an alternative means, for establishing the complete diversity necessary for removal under §1332.

This brings the court to the question of whether the burden on a removing defendant to demonstrate in his notice of removal the essential elements of subject-matter jurisdiction includes the obligation to point the federal court to any brooding realignment option.  This court believes that it must decline jurisdiction when no jurisdictional basis is affirmatively shown in the removal papers.  The fact that realignment was not referenced by any defendant until after the expiration of the thirty (30) day period for removal, and then only after motions to remand had been filed, further disinclines the court to realign Lane, especially over vigorous opposition wherein Lane points out that he was a necessary party **defendant** in the original action.  He rightfully wonders how a necessary party **defendant** can suddenly become a party **plaintiff**.

As this court reads the removal statute itself, 28 U.S.C. §1441(b), it unequivocally precludes removal in a case brought

under Alabama's Declaratory Judgment Act.   The controlling

language says:

> Any other such action [diversity] shall be removable
> **only if none of the parties in interest properly joined**
> **and served as defendants is a citizen of the State in**
> **which such action is brought.**

(emphasis supplied).

Lane was not only a citizen of the state in which this action was

brought, but he was "**properly joined and served as a defendant**".

To find removal jurisdiction under such circumstances would

totally ignore §1441(b) and is counter to the universal rule that

construes removal statutes strictly.   This removal statute

contemplates the determination of the question of removability

using the lineup of the parties at the time of removal, unless

that lineup is facially improper.   Here it was both proper and

mandated by Alabama procedure.

As early as *Anderson v. Watts*, 138 U.S. 694 (1891), the

Supreme Court of the United States described the diversity

jurisdiction of the federal courts as follows:

> [Because] the presumption is that a cause is without
> its jurisdiction unless the contrary affirmatively
> appears, it is essential that, in cases where
> jurisdiction depends upon the citizenship of the
> parties, such citizenship, or the facts which in legal
> intendment constitute it, should be distinctively and
> positively averred in the pleadings, or should appear
> affirmatively with equal distinctness in other parts of
> the record.   **It is not sufficient that jurisdiction may**
> **be inferred argumentatively from the averments.**

(emphasis supplied).

10

In *Pullman Co. v. Jenkins*, 305 U.S. 534, 59 S.Ct. 347 (1939), the Supreme Court expanded the inquiry to cover the right to remove under 28 U.S.C. §1441.  It reiterated the principle that, like original jurisdiction itself, the right to remove "was to be determined according to the plaintiffs' pleading at the time of the petition for removal".  *Id.* at 532.  Consistent with the presumption against removability, a district court in *Bristol-Myers Squibb v. Safety Nat'l Casualty Corp.*, 43 F.Supp.2d 734, 742 (E.D.Tex. 1999), followed the Supreme Court's reasoning to its logical conclusion, giving a one line instruction on when and how removability is to be determined:

> Federal district courts must judge their jurisdiction
> on the status of cases at the time of removal.

If, from the face of a complaint, realignment is mandatory, so that realignment is not an option but rather an absolute obligation, whether by the state court or by the federal court, a removing defendant's failure to alert the federal court of such obviously required realignment arguably may be excused, but where realignment is a matter for legitimate debate, it must be demanded either in the notice of removal or by amendment filed within thirty (30) days after the appearance of removability.

As already discussed, because Lane was a necessary party defendant in the state court, the action against him was not subject to dismissal under Rule 12(b)(6).  Therefore, as a proper party, his failure to join in the removal violates the unanimity

11

requirement of 28 U.S.C. §1446(a), and creates another defect in this removal.  Section 1446(a) precludes removal unless all properly named and served defendants join.  Andalusia and Hughes make this point, and the court agrees with them.  Before any alignment problem is confronted, all properly joined defendants must join in the removal.  Lane did not.  Section 1446(a) makes no exception for a proper party defendant who, in fact, may be in total agreement with the plaintiff.  It simply and straightforwardly requires that **all** properly named and served defendants join in the removal.  Here, one such defendant did not join.

There is yet another reason why this court declines Evanston's invitation to realign Lane.  The interests of Andalusia, Hughes and Lane in this case are not necessarily the same.  The fact that Lane resists realignment is not dispositive of this issue, but it provides a clue.  Not being able to read Lane's mind, but trying to think like he may think, Lane's counterclaim in the underlying case may be more of a defensive ploy than a serious damage suit against Andalusia, Hughes and Citgo.  In *Earnest*, Judge Coogler was not dealing with a coverage question presented by a counter-defendant as here.  Lane may not desire an indemnitor to back up his targets.  Instead, he may prefer his adversaries to be financially vulnerable to his counterattack.  He may only be angling for a favorable settlement

12

of the contract claim against him.  He may even honestly agree
with the insurance companies that they do not owe Andalusia and
Hughes a defense and/or indemnity, or he may strategically decide
that Andalusia, Hughes and Citgo have deep enough pockets for
him, and that prolonged litigation of a coverage dispute between
his tortfeasors and **four separate** insurance companies only gets
in the way of an early resolution of his tort claim.  These
possible reasons for an absence of virtual identity of interests
cannot be ignored.  Realignment is appropriate only if the
interests of the realignment parties are manifestly the same.
The court cannot make such a finding in this case.

This is not the only court that has expressed reservations
about reshuffling the lineup as an avenue to removal
jurisdiction.  The following, which could have been written for
the instant case, comes from *Agrella v. Great American Ins.*
*Companies*, No. 99-C-5309 (N.D. Ill., Nov. 29, 1999), unreported
except at 1999 WL 1101319:

> The insurer defendants argue, as a separate basis for
> federal diversity jurisdiction, that the non-insurer
> defendants should be realigned in accord with their
> actual interest in the real controversy.  *See Truck*
> *Ins. Exchange v. Ashland Oil, Inc.*, 951 F.2d 787, 788
> (7th Cir. 1992); *American Motorists Ins. Co. v. Trane*
> *Co.*, 657 F.2d 146, 149 (7th Cir. 1981).  The defendants
> contend the interest of the non-insurer defendants is
> really that of co-plaintiffs of Mr. Agrella and his
> partnership, and not co-defendants of the insurers,
> because their concern is to ensure that Mr. Agrella and
> his partnership have access to insurance funds to pay
> any settlement or liability.  Essentially the insurer's
> argument is that because they don't want to pay any

13

money to anyone, anyone who might want them to pay anything to somebody is really antagonistic and ought to be suing them.

While there is a superficial plausibility in this claim, I think it is mistaken.  It is Mr. Agrella and his partnership whom the non-insurer defendants, plaintiffs in the underlying action, think have done them wrong.  They have no gripe with the insurer defendants.  That is why they did not sue them to begin with.  Although the non-insurer defendants have an interest in being paid if they win a judgment or settlement in the underlying lawsuit, they do not care who pays them, whether it is the insurer defendants or Mr. Agrella and his partnership, as long as someone does.

If there were some showing that Mr. Agrella and his partnership were judgment-proof, my decision might be different, but here I see no real antagonism of interests.  Mr. Agrella and his partnership are clearly antagonistic to the non-insurer defendants who have sued them, and they are also antagonistic to the insurer defendants who have refused to indemnify or defend them.  But it is not always true that "the enemy of my enemy is my friend," or, here, my co-plaintiff.  Here, rather, we have two different groups of people with whom Mr. Agrella and his partnership have legal differences, and who are therefore properly aligned as co-defendants against them.

**The Supreme Court has stated, moreover, that the congressional policy underlying realignment as "one of jealous restriction, of avoiding offense to state sensitiveness, and of relieving the federal courts of the overwhelming burden of 'business that intrinsically belongs to the state courts' in order to keep them free for their distinctive federal business."** *City of Indianapolis v. Chase Nat. Bank*, **314 U.S. 63, 76 (1941).  Realignment here would run counter to the policy of narrow construction of diversity claims.  I therefore decline to realign the parties.**

(emphasis supplied).

Andalusia and Hughes offer another, if redundant and less

important, reason why Lane cannot be realigned as a plaintiff
against the insurance companies.  They say that if Lane is made a
plaintiff, 28 U.S.C. §1332(c)(1) will transmogrify the defendant
insurance companies into citizens of Alabama for purposes of the
diversity jurisdiction analysis.  This narrow and specialized
statute provides in pertinent part:

> In any direct action against the insurer of a policy or
> contract of liability insurance, whether incorporated
> or unincorporated, to which action the insured is not
> joined as a party-defendant, such insurer shall be
> deemed a citizen of the State of which the insured is a
> citizen.

Andalusia and Hughes, who are **insureds** but not **parties defendant**,
contend that a realignment of Lane will make the case into a
direct action by Lane against the insurers, and because it is one
in which the insureds are not joined as parties defendant,
diversity would be destroyed by §1332(a)(1).  This contention was
neither made to nor addressed by Judge Coogler in *Earnest*.  The
question is seemingly answered against Andalusia and Hughes by
the Eleventh Circuit in *Fortson v. St. Paul Fire and Marine Ins.
Co.*, 751 F.2d 1157, 1159 (11th Cir. 1985), where the Eleventh
Circuit held:

> Plaintiff's action is not a "direct action" within the
> meaning of 28 U.S.C.A. §1332(c) . . .
>
> * * *
>
> That section was enacted by Congress in order to
> eliminate the basis for diversity jurisdiction in
> states that allow an injured third-party claimant to
> sue an insurance company for payment of a claim without

joining the company's insured as a party, where the
insured would be a nondiverse party, even though the
party insurance company would otherwise by diverse.
*See Hernandez v. Travelers Insurance Co.*, 489 F.2d 721,
723 (5th Cir.) (holding workers' compensation insurer
deemed by section 1332(c) to be citizen of state of
which insured is citizen in suit brought by insured's
injured employee), *cert. denied*, 419 U.S. 844, 95 S.Ct.
78, 42 L.Ed.2d 73 (1974).  But where the suit brought
either by the insured or by an injured third party is
based not on the primary liability covered by the
liability insurance policy but on the insurer's failure
to settle within policy limits or in good faith, the
section 1332(c) direct action proviso does not preclude
diversity jurisdiction.  *Beckham v. Safeco Insurance
Co.*, 691 F.2d 898, 901-02 (9th Cir.1982); *Velez v.
Crown Life Insurance co.*, 599 F.2d 471, 473 (1st
Cir.1979).  **We hold that unless the cause of action
against the insurance company is of such a nature that
the liability sought to be imposed could be imposed
against the insured, the action is not a direct action.**
*Walker v. Firemans Fund Insurance Co.*, 260 F.Supp. 95,
96 (D.Mont.1966).  *See also Irvin v. Allstate Insurance
Co.*, 436 F.Supp. 575, 577 (W.D.Okla.1977) (holding
action by insured against his own insurer under
uninsured motorist provisions of policy not a "direct
action" within section 1332(c) proviso); *Bourget v.
Government Employees Insurance Co.*. 313 F.Supp. 367,
371 (D.Conn.1970) (holding action by judgment creditor
of insured against insurer for bad faith failure to
settle claim against insured not a "direct action"
within section 1332(c) proviso), *rev'd on other
grounds*, 456 F.2d 282 (2d Cir. 1972).

(emphasis supplied).

Does this mean that to make Lane a plaintiff in this case will

not create a "direct action" within the meaning of 28 U.S.C.

§1332(c)(1), and thus will not cause a citizenship change

affecting jurisdiction?  If the court agrees with Evanston that

realignment will provide the diversity it needs, but finds that

realignment will simultaneously destroy that diversity, the court

16

is faced with a dilemma for which it finds no answer.

Fortunately or unfortunately, the panel in *Fortson* did not mention, much less deal with, *O. M. Greene Livestock Co. v. Azalea Meats, Inc.*, 516 F.2d 509 (5ᵗʰ Cir. 1975), a case that, unless and until overruled by the Supreme Court or by an *en banc* Eleventh Circuit, is the law of the Eleventh Circuit. *See Bonner v. Prichard,* 661 F.2d 1206 (11ᵗʰ Cir. 1981). In *Azalea Meats*, the old Fifth Circuit expressly dealt with the then recently enacted §1332(c), much later discussed by the Eleventh Circuit in *Fortson*. The Fifth Circuit bindingly held:

> This amendment [§1332(c)] was passed to remedy the congestion in the district courts arguably caused by Louisiana's and Wisconsin's Direct Action Statutes, which allow suits directly against an insurer without joining the insured as a party defendant. *See Lumbermen's Mutual Casualty Co. V. Elbert*, 1954, 348 U.S. 48, 75 S.Ct. 151, 99 L.Ed. 59; Wechstein, The 1964 Diversity Amendment: Congressional Indirect Action Against State "Direct Action" Laws, 1965 Wis.L.Rev. 268. This Court has given the statute the broad interpretation it deserves in light of the harm Congress sought to remedy. *See Hernandez v. Travelers Ins. Co.*, 5 Cir. 1974, 489 F.2d 721; *Williams v. Liberty Mut. Ins. Co.*, 5 Cir. 1972, 468 F.2d 1207.
>
> **Georgia does not have a Direct Action Statute. Nonetheless, the plaintiff converted his action into a direct action by voluntarily dismissing the Commissioner from the case as a defendant. Section 1332(c) does not require the direct action to be brought under a statute. This case is clearly a "direct action against the insurer . . . to which action the insured is not joined as a party defendant", and therefore the insurer is "deemed a citizen of the State of which the insured is a citizen . . .".** Were it otherwise, the purpose of the 1964 amendment would be defeated by the simple expedient of the suing a non-

> diverse tort-feasor, joining a diverse insurance
> company, then immediately dropping the tort-feasor out
> of the case.

*Id*. at 510.  (emphasis supplied).

Like Georgia, Alabama does not have a so-called Direct Action
Statute.  Louisiana and Wisconsin do.  And, yet, the Fifth
Circuit in *Azalea Meats* found §1332(c)(1) to be applicable in a
Georgia proceeding and instructed the trial court to dismiss the
action for lack of jurisdiction because complete diversity was
lacking when the insurer was deemed to share the citizenship of
the insured.  It is difficult if not impossible for this court to
reconcile *Fortson* with *Azalea Meats*.  The court is, of course,
bound by *Azalea Meats* unless it can be distinguished from
*Fortson*.

In *Boston v. Titan Indemnity Co.*, 34 F.Supp.2d 419, 423
(N.D. Miss. 1999), a court that is located in a state, like
Alabama and Georgia, that has no Direct Action Statute, held:

> Miss. Code Ann. § 11-35-1, is the **equivalent of a
> direct action statute** "which simply permits a suit
> against the insurer, without joining the insured." *See
> Moore v. Sentry Ins. Co.*, 399 F.Supp. at 931 ("The
> Mississippi garnishment statutes, particularly
> Miss.Code Ann. § 11-35-47 (1972), clearly are
> permissive in nature an do not make the resident
> insured an indispensable party.").  The court finds the
> analysis of a similar state statutory scheme
> persuasive. *Prendergast v. Alliance General Ins. Co.*,
> 921 F.supp. 653 (E.D. Mo. 1996).  The court in
> *Prendergast* construed the Missouri garnishment statute
> as a direct action statute even though its clear
> language "seems to require" joinder of the insured
> judgment debtor. *Id.* at 655.

18

(emphasis supplied).

Because this court is not as sure as the *Titan Indemnity* court
was that a state statutory scheme, like Alabama's §6-6-27, is the
functional equivalent of a Direct Action Statute for the purposes
of implicating §1332(c)(1), this court does not base its decision
entirely on an interpretation of *Azalea Meats* that would force
either a denial of Evanston's belated invitation to realign Lane
in order to get nowhere, or to grant its motion in order to get
nowhere just as fast.  It may well be that §1332(c)(1) was
designed for a limited situation as suggested by *Fortson*, but if
*Azalea Meats* is to be followed, §1332(c)(1) can apply to cases
beyond the narrow congressional design to meet the problems in
Wisconsin and Louisiana.

        The court now turns, at last, to a proposition upon which it
could, and perhaps should, have relied upon solely, namely, a
facially fatal and insurmountable procedural shortcoming in this
removal.  The absence in the notice of removal of copies of the
summonses served on the defendants, uncorrected until after the
thirty (30) day removal period had expired, violates 28 U.S.C.
§1446(a), the statute that places limitations on removal
jurisdiction.  This statute cannot be ignored as a mere
technicality.  It provides that a removing defendant "**shall** file
in the district court of the United States for the district and
division within which such action is pending a notice of removal

19

signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a **short and plain statement of the grounds for removal**, together with a copy of all **process**, pleadings, and orders served upon such defendant or defendants in such action". (emphasis supplied). There is no distinction made between "process", "pleadings" and "orders". The statute mandates that all three items from the state court file be included. One without the others does not suffice. The statute is not a mere suggestion. The word "shall" is pregnant with meaning. Without repeating the arguments for not considering realignment unless the absolute necessity for realignment appears from the removal papers, §1446(a) not only requires certain documents to be attached, but requires a "plain statement of the grounds for removal". These words do not allow the removing defendant to rely on "grounds for removal" that can be deduced or that are not invoked by the removing defendant until after his time for removal has elapsed. Full compliance with the terms of §1446(a) is the only way to accomplish a successful removal. Only after a timely motion to remand was filed in this case, pointing out the absence of "process", and after the time for removal had expired, did Penn-American purport to amend its notice of removal to include the "process". This attempt to remedy a fatal procedural defect came too late. Evanston, of course, was also late in filing its motion for realignment.

Although not bound by what it has said in earlier cases on any particular subject, this court is persuaded by what it said on this very subject in *Kisor v. Collins*, 338 F.Supp.2d 1279 (N.D. Ala. 2004). *Kisor* case fits this case like a glove. The provisions of §1446(a) would be virtually meaningless if a removing defendant can cure its procedural error at any time before an order of remand is entered. This court's failure to grant a motion to remand ten minutes after the first such motion was filed and before Penn-American could react with its defensive ploy, would be to penalize Andalusia and Hughes for raising a valid objection to the removal. The court will not repeat what it said in *Kisor*. It will, however, follow it.

## Conclusion

For the foregoing separate and several reasons, Evanston's motion to realign Lane will be denied, and the motions to remand filed by Andalusia, Hughes and Lane will be granted. Because interesting and provocative questions are presented in this case, the court regrets that 28 U.S.C. §1447(d) will prevent the appellate review that would test this court's conclusions, about which the court is not without some doubt, especially inasmuch as this court is disagreeing to some extent with a respected and able fellow judge on this court.

DONE this 15th day of March, 2007.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE